**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHARLETTE D. LACHNEY, EBBIN NORRIS, ETHEL ROBINSON *et al*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIV-06-1389-HE (Consolidated Cases) |
| TARGET CORPORATION, | ) ) ) | |
| Defendant. | ) | |

**RESPONSE IN OPPOSITION TO
PLAINTIFFS' SECOND MOTION TO COMPEL**

Defendant Target Corporation responds to Plaintiffs' Second Motion to Compel as follows:

**Background**

Notwithstanding the arguments, conclusion, speculation and newspaper-like random clippings proffered by plaintiffs as "facts" in the appendix to their Motion, this case originated in 2003 as a single-plaintiff case of age and national origin discrimination brought by Michael Maiahy.  Beginning in late 2004, Maiahy sought to amend his complaint on multiple occasions, both to add approximately fifty putative plaintiffs and to assert class claims of age discrimination.  Maiahy's premise for the certification of a class (collective) action, and the same premise that was adopted by this Court in subsequently conditionally certifying a collective action through the current named plaintiffs, is that Target used succession planning as a tool for identifying older employees to be eliminated from its workforce and, once those employees were identified, the Company engaged in a campaign of unwarranted discipline or criticism

("nitpicking") against these employees, resulting in their actual or constructive discharge. This, claimed the plaintiffs, formed the basis of the "pattern and practice" that warranted certification of a collective action.  See, e.g. Lachney Complaint ¶¶ 4.01, 4.04.

As the years have gone by and extensive discovery has occurred, plaintiffs have steadily withdrawn from the very theory that formed the basis for class certification, to the point where plaintiffs' instant motion contains no mention *whatsoever* of succession planning or unwarranted discipline.  Now, in what appears to be an abandonment of the theory that convinced the Court to certify a class, plaintiffs are seeking discovery on an amalgam of completely different theories, namely that (1) Target's "Brand" and its use of the terms "Fast, Fun and Friendly" and "Speed is Life" contains hidden "meta-messages" which, according to plaintiffs' "experts," somehow proves that Target had a national plan to get rid of older employees; (2) Target changed its pension plan options which, according to an analysis conducted in a case in another part of the country, resulted in a statistically discriminatory termination of older employees who elected to remain in the former plan; and (3) Target changed its health insurance plan, which compelled some part-time employees to resign because they were no longer eligible for the same benefits. See generally Appendix A to Pls. Motion.  As a result of these new and wildly disparate theories, plaintiffs served the requests for production and requested (primarily informally) the depositions that form the basis of the instant motion.  For the reasons addressed herein, Target asserts that plaintiffs' motion is due to be denied.

A.      **Plaintiffs' Requests for Production**

1.      On January 18, 2008, plaintiffs served their third requests for production. Eleven (11) of the fifteen (15) requests (RFP Nos. 2, 5-13, 15) specifically address Target's Pension Benefits Plan and the transition of that Plan in 2003.   Plaintiffs apparently are seeking this information because, based on a statistical analysis performed in an unrelated case the Southern District of Indiana, Warpenburg v. Target Corporation, the plaintiff's expert in that case concluded that Target employees over the age of 40 who elected to remain in Target's existing pension plan were statistically more likely to be involuntarily terminated than those who selected the new plan or who were defaulted into it when they failed to explicitly opt to remain in the existing plan (Exh. 4 to Pls. Motion).

Most importantly, *none* of the plaintiffs in this case have asserted, or even suggested, that the changes to Target's pension plan played any role in their terminations, whether actual or constructive.  All of the named and remaining opt-in plaintiffs have been deposed and *not one* of them testified that Target discharged them or that they had resigned because of anything whatsoever having to do with Target's pension plan. Notably, there is not a single reference to any evidence, testimonial or otherwise, implicating Target's pension plan in this case.  As plaintiffs acknowledge, discovery is limited to any non-privileged information "relevant to the claim or defense of any party" (Pls. Motion, at p. 1) (emphasis added) (citing Fed. R. Civ. P. 26(b)(1)).  Thus, while discovery may not be restricted by the pleadings, it certainly should be limited to the allegations and evidence – or the lack thereof – that has developed in this case.  While the

purpose of discovery may be to flesh out a theory, it certainly is not designed to blindly search for one.

Moreover, the statistical analysis offered in <u>Warpenburg</u> is inapposite to the case at hand. Despite stating that it would "credit[] Dr. Harnett's opinion for purposes of [the motion for summary judgment]" (Exh. 4 to Pls. Motion) (Entry on Target Corporation's Motion for Summary Judgment, at *12), at no point did the <u>Warpenburg</u> court conclude that Dr. Harnett's findings demonstrated, or even supported, the plaintiff's contention that he was discriminated against because of his age. On the contrary, the court focused on the circumstances of the plaintiff's termination for violating Target's employee purchase policy as its basis for denying summary judgment on the plaintiff's age discrimination claim. <u>Id.</u> *12-13. Moreover, the court noted that "[p]laintiff's statistical evidence, however, does not relieve him of his burden of showing Target's specific intent to discriminate on the basis of age. In other words, Plaintiff must come forward with some evidence that the decision-makers in his case . . . had knowledge that he elected to remain in the Traditional Pension Plan." <u>Id.</u> *19. Here, plaintiffs do not even allege that anyone involved in their actual or constructive discharges were aware of their pension plan status, that they took some action on the basis of this status, or that their status was somehow related to their age. Accordingly, plaintiffs' motion to compel information regarding Target's pension plans is due to be denied.

2.     Of the four remaining requests for production, plaintiffs acknowledge that defendant agreed to produce the documents responsive to RFP. No. 1 (Pls. Motion, at p. 4). Moreover, in its response to RFP No. 3, wherein plaintiffs requested the individual

development plans (IDPs) for each of the named and opt-in plaintiffs, defendant stated that to the extent such plans were retained by Target, they would be located in the personnel files of these plaintiffs, which already have been produced (Exh. 3 to Pls. Motion, at p. 4).  While it is unclear whether plaintiffs' motion intends to address this specific request, to its knowledge Target has produced all such documents that it could locate and certainly will supplement its responses should any further relevant documents be discovered.

3.    Thus, only two remaining requests for production are at issue.  In the first (RFP No. 4), plaintiffs request

> Copies of all annual and mid-year performance reviews for the employees who terminated from employment, voluntarily or involuntarily, during the period July 22, 2004 through July 20, 2005.  This request includes, but is not limited to, performance goals and objectives, underlying and supporting documentation related to the performance evaluations, self-evaluations, supervisor evaluations, and related documents.

(Exh. 2 to Pls. Motion, RFP No. 4).  Defendant objected to this Request on the grounds of vagueness, overbreadth and burdensomeness (Exh. 3 to Pls. Motion, at pp. 4-5).  While defendant recognizes that the Court has stated that *regional* discovery may be appropriate in some respects, RFP No. 4 is not even limited in this fashion.  Rather, the Request appears to seek production of performance evaluations from *every* Target employee who separated from the Company for any reason for a one-year period.  Given that Target employs several hundred thousand employees at any time, many of whom are, as is the case with most retailers, employed for only a relatively brief period of time, the burden on Target to review and retrieve documents from what clearly would amount to thousands – if not tens of thousands – of personnel files, would be immense.  Conversely,

there is no apparent relevance to all of these performance evaluations.  To the extent that plaintiffs are seeking to identify younger employees who were treated more favorably with respect to evaluations (for the handful of current and opt-in plaintiffs who claim to have been unfairly evaluated), only those individuals who were similarly situated to these plaintiffs (*i.e.* those with comparable experience, who held the same job(s) and were evaluated by the same supervisors during the same time period) would potentially provide any relevant information.  Of course, defendant can only speculate as to the potential purpose of plaintiffs' overly-broad request because they have failed to identify such a purpose.  Accordingly, plaintiffs' motion to compel the information in this Request should be denied.

4.      Finally, in RFP No. 14, plaintiffs request the names, addresses, telephone numbers and other personal information for "all employees over the age of 40 who were terminated voluntarily or involuntarily or were retired from Region 300 during the period of July 22, 2004 to July 20, 2005" (Exh. 2 to Pls. Motion, RFP. No. 14).  Plaintiffs acknowledge that the Court previously denied identical requests for information related to employees who separated during 2002 and 2003 and apparently attempt to distinguish this request from those earlier requests by noting that they have limited the current request to the period for which the collective action was certified (Pls. Motion, at p. 6.).  This is a distinction without a difference.  There is absolutely no relevance in plaintiffs' request to the case and is nothing more than yet another effort to expand the parameters of the collective action certified by the Court.  As this Court previously has held, "[t]his request is simply an attempt to make an end-run around the court's conditional class

certification" (Order entered 10/3/07, at p. 6).   Therefore, plaintiffs' motion to compel this information is due to be denied.

**B.      Plaintiffs' Fact Witness Deposition Requests**

1.      In March 2008, counsel for plaintiffs notified defense counsel by e-mail that plaintiffs intended to depose ten individuals, four of whom are current Target employees and six of whom are not, and asked whether defendant planned to oppose these depositions (Pls. Motion, at p. 7).   Defense counsel responded that most of these individuals were current or former high-level executives whom it did not believe were proper deponents and that defendant intended to oppose their depositions (Exh. 5 to Pls. Motion).   Defendant did agree to produce current employee Monica Hall, a Human Resources Manager in Region 300, as both a fact witness and a 30(b)(6) deponent. Plaintiffs' Motion now requests that the Court "require[] Defendant to produce those individuals . . . who still work for Defendant and to cooperate in scheduling the depositions of those individuals who do not" (Pls. Motion, at p. 8).

2.      First, plaintiffs' Motion is due to be denied because they have neither noticed or subpoenaed the depositions of the current employees, nor subpoenaed the depositions of the former Target employees they have identified.   Rule 30 of the Federal Rules of Civil Procedure "requires a party desiring to take a deposition to give written notice of the deposition."   McMahon v. Presidential Airways, Inc., 2006 U.S. Dist. Lexis 4909, at *3 (M.D. Fla. Jan. 18, 2006) (citing Fed. R. Civ. P. 30(b)).   Rule 30 further provides that the attendance of witnesses (whether party or non-party) may be compelled by subpoena as provided for in Rule 45.   Id. (citing Fed. R. Civ. P. 30(a)(1)).   In addition,

Rule 37 provides that a court may compel attendance of a party or an officer, director or managing agent of a party if they fail to appear for a deposition *after being served with proper notice*." Id. (emphasis added) (citing Fed. R. Civ. P. 37(d)).

In the instant case, plaintiffs have not served deposition notices for any of the current employees nor issued subpoenas to these individuals or to the non-party witnesses. Therefore, there is no basis for the Court to compel their depositions (or defendant's "cooperation" in scheduling them). See McMahon, 2006 U.S. Dist. Lexis 4909, at *5 ("In this case, there is no basis for an order compelling attendance at a deposition because no notices of deposition were ever issued."); Smith v. Midland Brake, Inc., 1995 U.S. Dist. Lexis 12301, at *9 (D. Kan. Aug. 8, 1995) ("There has been no evidence that plaintiff served a deposition notice in accordance with [Rule 30(b)(1)]. While the formal notice might be waived by the parties when the deposition is taken by agreement, a deposition subpoena may only be issued under Fed. R. Civ. P. 45 when a notice to take the deposition of the witness has been served.").

Moreover, to the extent that the former Target employees are considered to be non-party witnesses, defendant would lack standing to directly challenge a subpoena issued to depose them (*e.g.* by way of a motion to quash or for a protective order), absent the existence of "a personal right or privilege with respect to the subject matter of the subpoena." Subair Sys., LLC v. Precisionaire Sys., Inc., 2008 U.S. Dist. Lexis 34578, at *5 (S.D. Fla. Apr. 26, 2008); Epling v. UCB Films, Inc., 2000 U.S. Dist. Lexis 21818, at

*7 (D. Kan. Aug. 7, 2000).[1]  By the same token, then, there is no basis for the Court to compel defendant to take any action to promote the taking of these depositions by way of some vague notion of "cooperation."  Under these circumstances, the right or privilege to challenge the deposition – once a proper subpoena is issued – would lie with the non-party witness.  If that individual elects to challenge the subpoena, that is his or her right. Until that time, however, there is no basis upon which the Court may compel these depositions and plaintiffs' Motion is due to be denied.

3.      Regardless, defendant has informed plaintiffs of the reasons why it believes these depositions are inappropriate, see Exh. 5 to Pls. Motion, and will address those reasons here.

a.      Tina Schiel – Although Ms. Schiel was the Senior Vice President of Region 300 during the relevant time period,[2] despite nearly four years of discovery in this and the related cases she has not been implicated in any manner beyond that which has been asserted since late 2004, when the previous named plaintiffs first attempted to obtain regional class certification based on her purported involvement in the alleged plan to eliminate older workers.  Specifically, plaintiffs have offered the testimony of former District Team Leader Bob Rojas, who in a November 2004 deposition testified that on one occasion Ms. Schiel complimented another District Team Leader, Brad Busby, by

---

[1]  Defendant is not conceding that such a right or privilege does not exist, given that plaintiffs clearly intend to depose these individuals for the purpose of gathering testimony regarding their personal knowledge of, and involvement in, events as former Target executives, for which plaintiffs no doubt will seek to hold Target liable.  Because plaintiffs have neither noticed nor subpoenaed these individuals, however, an exploration of whether that right or privilege exists is unnecessary.

[2]  Ms. Schiel has since transferred to a different Target region.

stating that Busby "had taken over a district that needed new, young fresh blood, and he was obviously moving in that direction." See Pl. Response to Mot. for Protective Order, at p. 7 & Exh. "R" in Greshowak v. Target Corp., Case No. A06-CA-379-SS (W.D. Texas) (attached as Exhibit A).[3]  Mr. Rojas further testified that this alleged comment was made shortly after he joined Region 300.  Id. Exh. R.  Mr. Rojas joined Region 300 in mid-2002, id. p. 12 (excerpt attached as Exhibit B), *two to three years* before any of the current plaintiffs separated from Target.  Moreover, none of the current named or opt-in plaintiffs have implicated Ms. Schiel in any of the events related to this lawsuit. Further, the assertions against Ms. Schiel were insufficient for this Court to expand the scope of the class to the regional level (Order entered March 16, 2007) [Doc. 26].

Generally speaking, courts have held that the deposition of a senior executive is prohibited where that individual "has limited personal knowledge of the facts related to the claims in a particular lawsuit."  Conti v. American Axle & Mfg., 2007 U.S. Dist. Lexis 18548, at *6 (E.D. Mich. Mar. 16, 2007) (collecting cases); cf. Thomas v. IBM, 48 F.3d 478, 482-83 (10th Cir. 1995) (upholding trial court's refusal to allow plaintiff to depose IBM chairman, despite claims that he "authored an IBM policy designed to discriminate against older employees," where chairman had no personal knowledge of plaintiff or her discharge).  Absent testimony from lower-level employees or other evidence directly implicating the senior executive, courts commonly require other

---

[3]  Plaintiff Greshowak, a former putative plaintiff in the *Maiahy* case (and who was represented by the same counsel as the instant plaintiffs), similarly moved to compel the deposition of Ms. Schiel in his individual case.  The court denied Greshowak's motion and entered a protective order precluding that deposition absent the development of additional evidence implicating Ms. Schiel.  See Exhibit C.  No such evidence was ever offered by Greshowak and none has ever been offered by these plaintiffs.

methods to obtain discovery (*e.g.* interrogatories) or depositions of lower-level individuals first.  In this case, plaintiffs *have* deposed such lower-level executives, the result of which was the alleged remarks testified to by Mr. Rojas.  Accordingly, Target does not believe that plaintiffs have demonstrated a sufficient basis to depose Ms. Schiel.

b.    <u>Carmen Moch</u> – Ms. Moch was the Group 391 Director until early 2003, when she transferred to another region.  As defendant reminded plaintiffs and as the Court is aware, this case has been consolidated with, among other cases, the *Maiahy* case for purposes of discovery.  When plaintiffs first asserted their class allegations in the *Maiahy* case, Ms. Moch was deposed and was questioned extensively regarding the allegations, primarily by former DTL Ken Liberton (who resigned from Target in 2001), that implicated her in these cases.  Since that time, no new allegations have been made, or other evidence developed, regarding Ms. Moch that would justify re-deposing her.  Fed. R. Civ. P. 30(a)(2)(B) requires a party to obtain the court's permission to depose a witness a second time if that individual already has been deposed in the case.  <u>See Roberts v. Oklahoma ex rel. Board of Regents</u>, 1997 U.S. App. Lexis 6679, at *30 (Apr. 8, 1997) (affirming trial court's refusal to allow second deposition where plaintiff had ability and opportunity to question witness on issues during first deposition).  Plaintiffs have neither moved the Court for permission to depose Ms. Moch for a second time nor demonstrated why they should be allowed to do so.  Moreover, because Ms. Moch is a senior Target executive, absent some additional compelling reason to re-depose her, plaintiffs should be required to resort to other methods of discovery.  Accordingly, plaintiffs' motion to compel Ms. Moch's (second) deposition should be denied.

      c.    <u>Gerald Storch, Daniel Casperson, Todd Blackwell, and Betty Kimbrough</u> –
As plaintiffs note in their Motion, Mr. Storch is the former Vice Chairman of Target (*i.e.*
second in command to the CEO). Currently, Mr. Storch is the Chairman and CEO of
Toys R Us. Plaintiffs have never made it clear how they believe Mr. Storch is implicated
in this lawsuit, other than some generalized connection based on Mr. Storch's former
responsibilities for Target's "strategic planning" (App. A to Pls. Motion). Similarly, Dan
Casperson is a former Vice President of Human Resources for Target and Todd
Blackwell is a former Senior Vice President of Human Resources. Mr. Casperson
currently is the Executive Vice President of Human Resources with Toys R Us. Betty
Kimbrough, as plaintiffs acknowledge, was Mr. Blackwell's predecessor and is no longer
employed by Target. As with Ms. Schiel, plaintiffs have not demonstrated any basis for
leaping over several layers of management to depose those who were among the highest-
level executives in the Company. Absent some testimony or other evidence implicating
any of these individuals in the separations of the plaintiffs, they should be prohibited
from deposing these individuals. Regardless, as defendant addressed above, because
these individuals are no longer employed by Target, plaintiffs are required to subpoena
them and to allow them the opportunity to oppose their depositions directly, as required
by the Federal Rules of Civil Procedure.

      d.    <u>Kim Strong</u> – Ms. Strong is the Regional Vice President – Stores HR for
Region 300, the senior human resources executive in the Region. While defendants again
acknowledge that the Court has allowed some regional discovery, there is absolutely
nothing in the record or facts to suggest that Ms. Strong has any information related to

the claims at issue.  Absent some degree of Ms. Strong's implication in this lawsuit, defendant believes that the depositions of other human resources managers or other discovery is more appropriate.  Defendant notes that it has agreed to produce Monica Hall, a Region 300 Human Resources Manager, in this respect.

e.   <u>Develle Turner</u> – As with most of the individuals at issue, Mr. Turner no longer works for Target and therefore plaintiffs are obligated to issue a subpoena to him and allow him to challenge his deposition directly.  Nevertheless, defendant adds that Mr. Turner, the former Head of Diversity for Target, was extensively deposed in the case of *Carraher v. Target* (to which plaintiffs have referred repeatedly).  In that deposition, which plaintiffs possess, Mr. Turner testified regarding his alleged discussion of "Target Brand" at a regional meeting.  Plaintiffs have not identified any other basis on which they believe Mr. Turner possesses information relevant to their claims.  Thus, defendant believes that his deposition is unnecessary.

C.   <u>**Plaintiffs' 30(b)(6) Deposition Notice**</u>

1.   Plaintiffs contend that defendant improperly objected and tailored the topics for which it designated a representative in response to plaintiffs' Rule 30(b)(6) request (Pls. Motion, at p. 9).  Plaintiffs' Motion is due to be denied in the first instance because no Rule 37 conference has been held concerning these issues.  While counsel for the parties did confer on March 26, 2008 regarding plaintiffs' written discovery and the proposed fact deponents identified herein, <u>see</u> Pls. Motion, at p. 8, defendant did not serve its Rule 30(b)(6) designation until April 16, 2008, <u>see</u> Exh. 7 to Pls. Motion, and the parties have conducted no additional Rule 37 conference since that time.  The local

rules explicitly provide that this Court shall "*refuse* to hear any such motion or objection unless counsel for movant first advises the Court in writing that counsel personally have met and conferred in good faith and, after a sincere attempt to resolve differences, have been unable to reach an accord." LCvR37.1 (emphasis added). Because the parties have not had an opportunity to resolve these issues informally, plaintiffs' Motion should be denied in this respect.

2.      Nevertheless, defendant will briefly address the bases for its objections and/or tailoring of its designation of a corporate representative as to the topics identified in the notice:

a.      <u>Subject No. 1</u> – Plaintiffs seek testimony regarding "all areas of employee benefits," including but not limited to Target's pension and health care plans and the costs of and changes to those plans. As discussed in detail above, not a single plaintiff has asserted that he or she resigned or was discharged as a result of anything having to do with Target's pension plans. Similarly, only <u>six</u> of the remaining 38 opt-in plaintiffs and <u>none</u> of the named plaintiffs have asserted that they resigned as a result of changes to Target's health insurance benefits. As plaintiffs note, this is a "pattern and practice" case and, in order to establish that they are similarly situated for the purposes of this collective action, plaintiffs must demonstrate that they were subjected to the same discriminatory "policy, plan or practice." Clearly, if none of the plaintiffs were discharged (actually or constructively) because of changes to Target's pension plans, and if only a handful of the opt-in plaintiffs and none of the named plaintiffs resigned as a result of changes to the Company's health insurance plans, then clearly they would not be similarly situated and

no common "pattern or practice" would apply.  Accordingly, defendant has objected to these subjects.  In addition, defendant objected on the basis of overbreadth because there is no reasonable number of persons who are knowledgeable in "all aspects" of Target's pension and health insurance benefits plans.

      b.    <u>Subject 2</u> – Target has agreed to produce a representative to testify regarding the subject of claims, complaints and charges of age discrimination (both internally and externally) in Region 300 but objected to the extent that plaintiffs seek someone who could testify in detail as to every such complaint or charge for a five-year period.  Certainly, such claims were handled by a number of people over the course of those years and would necessarily involve every executive, human resources person or other employee who may have been involved.  Defendant further objected as a matter of course to the extent that any questions posed regarding such claims would invade the work-product or attorney-client privileges.

      c.    <u>Subject 3</u> – Target has objected to this request as overbroad.  Clearly, not "all areas" and "any documents" discussed or disseminated during regional meetings has any bearing on the claims in this lawsuit.  Accordingly, defendant reminded plaintiffs that it previously had produced documents regarding potentially relevant topics that were discussed at such meetings and invited plaintiffs to tailor their request accordingly.  Instead of doing so – or seeking clarification through a Rule 37 conference – plaintiffs filed the instant motion.

      d.    <u>Subject 4</u> – Target objected to this request because, again, it is unnecessarily overbroad, vague and unduly burdensome.  No person or reasonable

number of persons could testify as to "all areas of marketing involving Target's customer demographics, strategies and plans" or the other topics identified in the request. Moreover, such a request seeks irrelevant information.  Plaintiffs' contention that Target markets itself to a "younger" or "hip" customer does not demonstrate (in any logical way) that it undertook a large-scale plan to intentionally eliminate the older members of its workforce.

       e.     <u>Subject 5</u> – Plaintiffs request someone to testify regarding Target's organizational chain of command for all of Region 300, including the identity of *every* Store Team Leader in the region during a five-year period.  As defendant responded, no person or reasonable number of persons could testify on such a topic.   Defendant suggested that plaintiffs issue written discovery tailored to the chain of command relevant to the plaintiffs themselves.   Instead, plaintiffs filed the instant motion.

       f.     <u>Subject 7</u> – Plaintiff requested testimony on the "geographic boundaries" of Region 300 during a five-year period.  Such a request seeks irrelevant information.  As defined by the class certified by the Court, the relevant "geographic" boundaries are determined by those stores over which Carmen Moch had responsibility (directly or indirectly) as the Group 391 Director.  This has been, and continues to be, the relevant scope of the case.  This request is nothing more than a variation of the "end-around" that plaintiffs repeatedly have sought to gain information on other employees.

       g.     <u>Subject 8</u> – Target has agreed to produce a representative to testify on this subject but, as with Subject No. 2, objected to the extent that plaintiffs seek someone who will testify about every detail regarding every internal complaint during a five-year

period and, of course, to the extent that any questioning would invade the work-product or attorney-client privileges.

h.      Subject 10 – Despite the fact that the Court has rejected plaintiffs' efforts to obtain national discovery, they now apparently seek such discovery regarding training on age discrimination.  In the spirit of the Court's order on plaintiffs' previous motion to compel, defendants agreed to produce a representative to testify on this subject at the regional level.  Beyond this, defendant is unclear as to the nature of plaintiffs' concern regarding the designation, confusion that likely could have been resolved informally.

i.      Subject 11 – As with other requests, plaintiffs broadly seek testimony regarding "any and all studies, surveys, and/or analyses of Target's operational, advertising, marketing, human resources or hiring strategies."  As defendant responded, such a request is vague and overbroad.  No person or reasonable number of persons could testify as to all such matters and clearly not all (in Target's opinion, none) of these studies, surveys, etc. (to the extent they exist) are relevant to the claims at hand.

j.      Subject 12 – After repeatedly stating that regional discovery is appropriate, plaintiffs now claim that defendant's agreement to produce a representative to testify regarding succession planning as it pertained to Region 300 "alters the subject request both geographically and substantively."  Defendant is unclear what plaintiffs mean by a "substantive" alteration, as its designation parrots the request except as to the geographic scope.

k.      Subject 14 – Plaintiffs request testimony on the topic of on-campus recruiting and Target has agreed to produce a representative to testify in this respect.

Defendant tailored the request only to make it clear that the relevant topic is how, if at all, on-campus recruiting is tied to plaintiffs' age discrimination claims. Certainly, the general topic of on-campus recruiting is significantly broader.

l.      Subject 15 – Plaintiffs request testimony on Target's executive recruiting software known as "Brass Ring."  Defendant has agreed to produce a representative to testify on this subject and has simply attempted to clarify that the scope of testimony should be limited to its relevance to plaintiffs' claims, *i.e.* that questions about how the software works or which keystrokes gather which information, is overbroad.

m.      Subject 16 – Target has agreed to produce a representative to testify on this subject but, because plaintiffs seek testimony on a very general subject (retention of employee records in Region 300 for a six-year period), Target objected to the request as overbroad.  While plaintiffs' actual questioning may be more circumscribed than their request, defendant preserved this objection just in case.

n.      Subject 18 – Plaintiffs broadly and vaguely request testimony on the subject of "employee turnover" in Region 300 for a six-year period.  Plaintiffs request is so broad and generally defined that defendant cannot fathom how any representative could be identified for, let alone prepare to testify on, such a topic.

o.      Subjects 19 & 20 – Target has agreed to produce a representative to testify on the topic of presentations at its regional and national human resources meetings in 2004 and 2005.  However, because plaintiffs failed to limit the topic any further (*e.g.* someone "knowledgeable in *all* areas . . . including but not limited to *all* presentations"), Target attempted to better define the topic to make it relevant to plaintiffs' claims.

Again, not every presentation, discussion, etc. would have bearing on plaintiffs' claims and to expect someone to be knowledgeable about every aspect and every presentation at these meeting – even to the extent of identifying *every* attendee – is overly broad, unduly burdensome and seeks irrelevant information.   Notably, defendant took its tailored description of the topic directly from those to which the parties agreed in defendant's responses to plaintiffs' first discovery requests following a Rule 37 conference at that time.  <u>See</u> Exh. D, at p. 3 (Priest ltr. dated 7/17/07).

<u>Conclusion</u>

For all of the reasons set forth herein, plaintiffs' motion to compel is due to be denied in all respects.

Respectfully submitted,

/s/ *David T. Wiley*
Thomas A. Davis
E-mail:  DavisT@jacksonlewis.com
David T. Wiley
E-mail:  WileyD@jacksonlewis.com
Shannon L. Miller
E-Mail:  MillerS@jacksonlewis.com

**JACKSON LEWIS LLP**
First Commercial Bank Building
800 Shades Creek Parkway, Ste. 870
Birmingham, Alabama 35209
Ph:     (205) 332-3101/3102/3104
Fax:    (205) 332-3131

**Attorneys for Defendant Target Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of July, 2008, a true and correct copy of the foregoing has been electronically served via the CM/ECF upon the following counsel of record:

> Jim T. Priest, Esq.
> Timothy D. Eisel, Esq.
> Whitten Burrage Priest Fulmer Anderson & Eisel
> One Leadership Square, Ste. 1350
> Oklahoma City, OK 73102
> jpriest@whittenburragelaw.com
> teisel@whittenburragelaw.com
>
> Jana B. Leonard, Esq.
> LEONARD & ASSOCIATES, P.L.L.C.
> 8265 S. Walker
> Oklahoma City, OK  73139
> leonardjb@leonardlaw.net

> /s/ *David T. Wiley*
> Counsel of Record