IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLETTE D. LACHNEY, EBBIN NORRIS, ETHEL ROBINSON *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> TARGET CORPORATION, <br><br>  Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )  CIV-06-1389-HE <br> (Consolidated Cases) |

## EXPEDITED MOTION FOR ORDER REGARDING DEPOSITIONS OF EXPERT WITNESSES GARY RICHETTO AND ROBERT BARTLETT

Defendant Target Corporation, pursuant to Fed. R. Civ. P. 26(c)(2), moves the Court for an order directing that plaintiffs' expert witnesses Gary Richetto and Robert Bartlett appear for their depositions, noticed for December 12, 2008 and December 17, 2008, respectively. In support of its Motion, defendant asserts the following:

### Background

1.  Pursuant to the Court's Scheduling Order, on or about June 30, 2008 plaintiffs designated four expert witnesses, including Dr. Gary Richetto and Mr. Robert Bartlett.

2.  The following week (July 10, 2008), defense counsel Tom Davis first inquired of plaintiffs' counsel when and where plaintiffs' experts would be available for deposition (Exh. A, p. 2). Plaintiffs' counsel Jim Priest responded that he would confer with the experts to identify dates. Id. Mr. Davis replied that the week of September 11, 2008 would be preferable for deposing Mr. Bartlett, as Mr. Davis was going to be in San Francisco (where Bartlett resides) that week (Exh. A, p. 1).

3. On July 18, 2008, Mr. Priest followed up on defense counsel's request, to determine which of the experts defendant specifically wanted to depose (Exh. B). The following day, Mr. Davis clarified that at this point, defendant planned to depose only Dr. Richetto and Mr. Bartlett. Id.

4. On August 7, 2008 Mr. Davis noted, in following up on a meeting between Mr. Davis, defense counsel Shannon Miller and Mr. Priest regarding plaintiffs' then-outstanding second motion to compel, that Mr. Priest had agreed to provide dates for the depositions of plaintiffs' expert witnesses (Exh. C).

5. The following day, Mr. Priest e-mailed defense counsel with proposed dates in September for the depositions of Dr. Richetto and Mr. Bartlett (Exh. D). In response, on August 11, 2008 Mr. Davis suggested September 10th for Mr. Bartlett's deposition and September 25th for Dr. Richetto's deposition. Id. Dr. Richetto's deposition subsequently was tentatively scheduled for September 25th.

6. On August 20, 2008, the Court entered its order on plaintiffs' second motion to compel. The following day, defense counsel David Wiley and Mr. Priest held a telephone conference to discuss the parameters of a joint motion for extension of discovery and the depositions of witnesses for the respective parties. Mr. Priest stated that he wanted whatever documents defendant had responsive to the Court's order prior to his taking of any of the defense witness depositions. At that time, Dr. Richetto's deposition remained tentatively scheduled for September 22nd and Mr. Bartlett's deposition was tentatively planned for late October or early November, to coincide with the depositions of defense witnesses located on the West coast.

7. The parties subsequently sought, and were granted, a six-month extension of the discovery period. As of August 26th, Dr. Richetto's deposition remained tentatively scheduled for September 25th. On August 27th, Mr. Priest stated that he had a conflict on September 25th and therefore Dr. Richetto's deposition could not be held on that date (Exh. E).

8. On September 11, 2008, Mr. Davis followed up with Mr. Priest, again asking for deposition dates for these expert witnesses and noting, in light of an anticipated full schedule of defense witness depositions in early 2009, that these expert depositions needed to be completed in 2008 (Exh. F). Mr. Priest's response was, "[F]irst things first: when can we anticipate getting the information the court ordered be produced?" Id. Mr. Davis responded that defendant was working towards production of the documents by mid-November but that his "recollection is that the experts can be deposed in the interim per [his] previous e-mails and [Mr. Priest's] representations." Id.

9. Two days later (September 13th), Mr. Davis again asked for dates for the expert witness depositions, noting that "these depositions are not contingent on receipt of documents from [defendant]" (Exh. G).

10. On September 27, 2008, Mr. Priest stated – for the first time – that he saw "no point or purpose in deposing our experts until we receive the documents you need to produce and take the depositions of your folks[,] since it is highly likely that information will influence their opinions and probably require them to amend their reports" (Exh. H). Mr. Priest then proposed – again for the first time – that the expert depositions be delayed until March 2009. Id. Mr. Priest added:

> I do not believe the court would require me to produce them at this time given the fact you have their opinions at this point in writing and you have not yet produced discovery the judge ordered which will affect their opinions. The judge will not oblige us to produce them twice.

Id.

11. From that point on, plaintiffs' counsel stated that plaintiffs' expert witnesses should not be produced for deposition until plaintiffs received all of the documents ordered by the Court related to plaintiffs' second motion to compel. See, e.g. Exh. I (Priest e-mail dated 10/10/08; Exh. J (Priest e-mail dated 11/4/08).

12. On November 5, 2008, defendant served deposition notices for Dr. Richetto and Mr. Bartlett.[1]  When a courtesy copy of the notices was e-mailed to Mr. Priest, he again asserted that they expected all of the documents prior to producing the expert witnesses, and now contended that defense counsel had "promised" that all documents would be produced by "the first week" in November (Exh. K) (Priest e-mail dated 11/5/08), when in fact defense counsel had never stated anything more than that they were "shooting for" a mid-November production.

13. On November 6, 2008, defendant produced all of the documents responsive to plaintiff's third requests for production – the entirety of which was devoted to requests concerning the conversion of Target's pension plan – except for the list of Region 300 employees and their pension selections, a request that was the subject of a recent motion to alter or amend by defendant and which was ruled upon by the Court only last week. In its response to defendant's motion to amend, plaintiffs expressly stated that this pension

---

[1] The parties have agreed that the expert witness depositions can be scheduled via notice rather than through issuance of subpoenas.

information was <u>not</u> an issue with respect to scheduling the expert witness depositions (Pls. Response to Def. Motion to Alter or Amend Aug. 20, 2008 Order, at p. 6).

14. The remainder of documents to be produced relevant to the Court's order on plaintiffs' second motion to compel were requested by way of a 30(b)(5) production request accompanying a 30(b)(6) deposition notice issued to defendant (Exh. L). Specifically, plaintiffs 30(b)(6) notice stated, "pursuant to Rule 30(b)(5) and Rule 34 of the Federal Rules of Civil Procedure, that each witness designated to so testify **produce at his/her deposition** any and all DOCUMENTS that concern or are related to his/her subject area of testimony." <u>Id.</u> at p. 2 (emphasis added).

15. Nevertheless, in its November 6th production, defendant also produced the documentation that it had gathered to date responsive to the 30(b)(5) request.

16. On November 12, 2008, Mr. Davis advised Mr. Priest that defendant intended to proceed with the expert depositions as noticed (Exh. M).

17. On November 18, 2008, Mr. Davis made it clear to Mr. Priest that despite what the latter may have believed, defendant intended to comply with plaintiffs' discovery requests as issued and that any 30(b)(5) documents produced prior to the 30(b)(6) deposition were provided only as a courtesy (Exh. N). Mr. Davis further noted that defendant continued to gather documents, including those related to marketing set forth in the 30(b)(5) request, and hoped to produced them prior to Thanksgiving. <u>Id.</u> Plaintiffs' counsel did not respond.

18. That same day, Mr. Davis reiterated to Mr. Priest that defendant intended to proceed with the expert depositions as noticed (Exh. O). Mr. Davis further informed Mr.

Priest that expert witnesses cannot modify their opinions in an effort to "bolster" their conclusions, citing State ex. Rel. Edmondson v. Tyson Foods, Inc., 2008 U.S. Dist. Lexis 89398 (N.D. Okla. Oct. 28, 2008) (addressed further below), and therefore whatever documentation Mr. Priest believed his experts needed to have prior to their depositions was immaterial. Id. Again, plaintiffs' counsel did not respond.

18. On November 25th, Mr. Davis again e-mailed Mr. Priest to confirm the depositions of the expert witnesses (Exh. P). Mr. Priest did not respond.

19. On November 26th, Mr. Wiley informed Mr. Priest by e-mail that the marketing documents were ready to be produced but that, due to the sensitive nature of these documents, defendant required a protective order that included a filing-under-seal requirement (Exh. Q). Mr. Wiley added that defendant would produce the documents in advance of formal entry of the protective order, if counsel would agree to abide by its terms until that time. Id.

20. Not having heard anything from plaintiffs' counsel for nearly a month, and with only two weeks remaining until the noticed deposition of Dr. Richetto, defense counsel and defendant finalized travel plans for Dr. Richetto's deposition.

21. On December 1, 2008 – nearly a month since his last communication – Mr. Priest e-mailed defense counsel and stated that it was too late for his experts to review the

marketing documents produced by Target[2] and therefore that plaintiffs' expert witnesses would not appear for their depositions as noticed for December 12th and 17th (Exh. R).[3]

22.    As is evidenced by the above chronology, defendant has, pursuant to Rule 37, conferred with opposing counsel in good faith regarding this issue but has been unable to resolve the matter without Court intervention.

## Motion

The Federal Rules of Civil Procedure provide that the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c); Thomas v. IBM, 48 F.3d 478, 482 & n.3 (10th Cir. 1995). The rules further provide that the court may order "that the disclosure or discovery may be had on specified terms or conditions, including a designation of the time or place." Fed. R. Civ. P. 26(c)(2); In re Standard Metals Corp., 817 F.2d 625, 628 (10th Cir. 1987).[4]  A court's entry of a protective order is reviewed only for an abuse of discretion. Thomas, 48 F.3d at 482.

Defendant began the process of scheduling the depositions of Dr. Richetto and Mr. Bartlett in July 2008. At that time, plaintiffs' expert reports already had been prepared and produced. Moreover, plaintiffs already had filed their second motion to compel and were fully aware that they had not received any marketing materials from defendant, as

---

[2]   In his December 1st e-mail, Mr. Priest did agree to the protective order and therefore defendant sent the marketing materials to plaintiffs' counsel via overnight delivery that same day.

[3]   Defendant noted in its recent motion to alter or amend that this issue had not yet become ripe for the Court's attention, given that plaintiffs had not yet unequivocally stated that the expert depositions would not proceed as scheduled. Mr. Priest's December 1st e-mail establishes that the matter now requires the Court's attention.

[4]  Alternatively, the Federal Rules of Civil Procedure may compel attendance at a deposition if a witness fails to appear for that deposition. Fed. R. Civ. P. 37(d). Although Rule 37(d) is intended for witnesses who *failed* to appear for their deposition, plaintiffs' counsel has made it clear in advance that neither Dr. Richetto nor Mr. Bartlett intend to appear for their depositions as noticed.

those materials were a subject of the motion to compel.  Nevertheless, for nearly three months – including more than a month *after* the Court entered its order on the second motion to compel – plaintiffs were amenable to scheduling the depositions of their expert witnesses irrespective of any documents they might receive as a result of the second motion to compel.  Suddenly, and without agreement by defense counsel, they adopted the unilateral position that these depositions should not go forward without production of all of the documents related to the second motion to compel.  Defendant asserts that plaintiffs' position is untenable and that Dr. Richetto and Mr. Bartlett should be directed to appear for their depositions as noticed.

Plaintiffs assert that their experts should not have to appear as noticed because (1) they might revise their reports after reviewing the documents produced by defendant and (2) if they do revise their reports, they might be subjected to a (presumably burdensome) second deposition.  Plaintiffs' counsel suggests that Target's conduct would be tantamount to refusing to produce relevant documentation and then arguing that the experts could not modify their opinions, which plaintiffs' counsel then likens to a child murdering his parents and then offering his orphan status as a defense (Exh. R).

First, although in his expert report Dr. Richetto stated that he "reserves the right to further amplify, modify or otherwise alter the opinions expressed in [his] report if warranted by review of additional discovery materials," he did not state that he required such information to complete his report or to reach an ultimate opinion.  On the contrary, Dr. Richetto stated that it was his "over-arching opinion" that Target expressions such as "Fast, Fun and Friendly" conveyed a "youthful" message.  Similarly, Mr. Bartlett did not

8

even assert that he might change his opinion upon review of additional materials, concluding instead that in his opinion, Target unquestionably had engaged in age discrimination. Thus, neither of these experts has stated that they need additional information to "complete" their reports or to reach their ultimate opinions, as plaintiffs suggest.

Regardless, and as plaintiffs' counsel is aware, Rule 26(e)(1), which controls the supplementation of expert reports, allows such supplementation "'only in certain limited circumstances . . . [*i.e.*] when the party or expert learns the information previously disclosed is incomplete or incorrect in some material respect.'" EEOC v. Outback Steak House of Fla., Inc., 2008 U.S. Dist. Lexis 63758, at *24 (D. Colo. Aug. 20, 2008) (quoting Cook v. Rockwell Int'l Corp., 2006 U.S. Dist. Lexis 89121, at *286-*287 (D. Colo. Dec. 7, 2006); accord Jacobsen v. Deseret Book Co., 287 F.3d 936, 953-54 (10th Cir. 2002). "A supplemental expert report that **states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)**." Id. (citations omitted) (emphasis added). "Permissible supplementation 'means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" Id. (quoting Keener v. U.S., 181 F.R.D. 639, 640 (D. Mont. 1998); accord State of Oklahoma v. Tyson Foods, Inc., 2008 U.S. Dist. Lexis 89398, at *19 (N.D. Okla. Oct. 28, 2008).

Thus, plaintiffs cannot now submit modified expert reports simply to strengthen the unequivocal opinions those experts already have issued. "To rule otherwise would

create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a)." Cohlmia v. Ardent Health Servs., LLC, 2008 U.S. Dist. Lexis 65292, at *18 (N.D. Okla. Aug. 22, 2008) (citations omitted); accord Quarles v. U.S., 2006 U.S. Dist. Lexis 96932, at *14-*17 (N.D. Okla. Dec. 5, 2006) (striking plaintiffs' "supplemental" expert report as improper attempt to bolster previous opinion in the face of attack by defendant's expert report); Galaxy Ventures, LLC v. Rosenblum, 2005 U.S. Dist. Lexis 46547 (D.N.M. July 21, 2005); Aid for Women v. Foulston, 2005 U.S. Dist. Lexis 45617, at *8-*16 (D. Kan. July 14, 2005) (striking "surrebuttal report" offered to respond to criticisms made by opposing experts' reports); Dan v. U.S., 2002 U.S. Dist. Lexis 28627, at *12 (D.N.M. Feb. 6, 2002) ("The supplementation does not allow any new opinions or expansion of opinions previously submitted.") (citing holdings of Tenth Circuit Judge Paul J. Kelly in Coleman v. Amtrak, No. Civ. 99-474 PK/LFG (D.N.M. Jan. 12, 2000) and Resolution Trust Corp. v. Gregory, No. Civ. 94-052 PK/LFG (D.N.M. Dec. 13, 1995)).

If Dr. Richetto or Mr. Bartlett believed that they needed additional documentation to prepare their expert reports, plaintiffs could have sought an extension of the expert report submission deadline. Notably, plaintiffs issued the 30(b)(6) deposition notice and accompanying 30(b)(5) request on March 14, 2008, more than three months before the expert report submission deadline (a deadline that already had been extended at plaintiffs'

request).  If Dr. Richetto or Mr. Bartlett believed that they needed the marketing documentation identified in the 30(b)(5) request, they should not have issued their expert reports.  "If the expert is unable or unwilling to make the disclosures he [or she] should be excluded as a possibility for retention as an expert witness in the case." Beller v. U.S., 221 F.R.D. 696, 701 (D.N.M. 2003) (striking plaintiffs' revised expert report).  Therefore, plaintiffs' contention that their experts might prepare supplemental reports is not a proper basis for refusing to make them available for their depositions as noticed.

Furthermore, because plaintiffs' experts are not permitted to prepare supplemental or amended reports merely to bolster their previous opinions (defendant assumes that they will not be *changing* those opinions based on the additional documentation produced), plaintiffs' assertion that the experts might be subjected to a second deposition is unfounded.  Nevertheless, should plaintiffs later attempt to submit expert reports, defendant acknowledges that the Court may have to determine whether such reports are proper and timely, and whether defendant will be allowed to conduct limited follow-up depositions regarding the supplemental reports.  This possibility should not preclude defendant from taking these depositions as currently noticed.  Importantly, defense counsel has been working diligently to coordinate the depositions of at least seven (7) depositions of current and former high-level Target executives, as well as at least two, and possibly three, depositions of corporate representatives, all of whom are scattered across the country and which likely will take most, if not all, of the remaining discovery period to schedule.  It is for this reason that defense counsel repeatedly has made it clear to plaintiffs' counsel that the depositions of Dr. Richetto and Mr. Bartlett needed to occur

by the end of 2008. Thus, defendant believes that any postponement of these depositions could potentially create discovery delays, something that plaintiffs repeatedly (and unjustifiably) accuse defendant of causing.

## Conclusion

For the reasons set forth herein, defendant moves the Court to enter an order compelling the attendance of Dr. Richetto and Mr. Bartlett for their depositions on December 12, 2008 and December 18, 2008, as noticed.

Respectfully submitted,

/s/ *David T. Wiley*
Thomas A. Davis
E-mail: DavisT@jacksonlewis.com
David T. Wiley
E-mail: WileyD@jacksonlewis.com
Shannon L. Miller
E-Mail: MillerS@jacksonlewis.com

**JACKSON LEWIS LLP**
First Commercial Bank Building
800 Shades Creek Parkway, Ste. 870
Birmingham, Alabama 35209
Ph:   (205) 332-3101/3102/3104
Fax:  (205) 332-3131

**Attorneys for Defendant Target Corporation**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 2nd day of December, 2008, a true and correct copy of the foregoing has been electronically served via the CM/ECF upon the following counsel of record:

>Jim T. Priest, Esq.
>Timothy D. Eisel, Esq.
>Whitten Burrage Priest Fulmer Anderson & Eisel
>One Leadership Square, Ste. 1350
>Oklahoma City, OK 73102
>jpriest@whittenburragelaw.com
>teisel@whittenburragelaw.com
>
>Jana B. Leonard, Esq.
>LEONARD & ASSOCIATES, P.L.L.C.
>8265 S. Walker
>Oklahoma City, OK  73139
>leonardjb@leonardlaw.net

>   /s/ *David T. Wiley*
>Counsel of Record