## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLETTE D. LACHNEY, EBBIN NORRIS, ETHEL ROBINSON *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TARGET CORPORATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) CIV-06-1389-HE <br> ) (Consolidated Cases) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT TARGET CORPORATION'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE PLAINTIFFS' PROPOSED EXPERT TESTIMONY OF ROBERT BARTLETT

Defendant Target Corporation ("Target") submits the following in reply to Plaintiff's Response in Opposition to Defendant's Motion to Exclude Plaintiffs' Expert Report and Testimony of Robert Bartlett:

1. Plaintiffs assert that Mr. Bartlett is qualified as an expert in this case because his "professional experience relating to retail marketing and management is extensive and spans decades" (Pls. Opposition, at p. 6). Mr. Bartlett may in fact possess such experience but that is immaterial to what he purports to offer in the way of expert testimony in this case. Defendant does not question that Mr. Bartlett could testify in generalities regarding the mission of retailers to appeal to their customers while controlling costs and increasing earnings. However, Bartlett has not undertaken any independent analysis of *defendant's* marketing and management processes, or its legal and human resources practices and procedures, or demonstrated any connection among them showing that defendant's alleged plan to eliminate older workers can be objectively

established. On the contrary, despite his concession that the "major potential for error" in his analysis was whether Target could "show[] that there was a credible process in place in the stores in the field organization" to protect employees from age discrimination, Bartlett fully admits that he did not even review any documents or undertake any other examination of Target's anti-discrimination policies or its internal complaint policy and procedure. Notwithstanding this significant shortcoming, he nevertheless asserts in conclusory fashion that "the absence of any meaningful written prohibition of age discrimination in the policies and procedures that were employed by Target human resources management or review process that could be accessed by these ex-employees allowed age discrimination to take place" (Bartlett Report, at p. 8).

Moreover, Bartlett admits that prior to this case he has *never* provided expert testimony regarding age discrimination or employment discrimination in general; has never taken a course on employment law; is not a human resources professional; has never investigated the merits of any age discrimination claim; has never developed or implemented an anti-discrimination policy or procedure; and has never authored any publications or articles on employment discrimination (Bartlett Depo. pp. 11-12, 13, 32, 34, 39, 73, 75, 80). Therefore, whatever experience Bartlett may possess, it is clear that he is not qualified as an expert on the particular subject matter at issue in this case. See Lifewise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004) (noting that expert witness must, through knowledge, skill, experience, training or education, be qualified in the *particular* subject matter); accord In re Williams Sec. Litig., 496 F. Supp.

2d 1195, 1232 (N.D. Okla. 2007) (citing Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001)).

2. Plaintiffs assert that Bartlett "has provided expert testimony in approximately one hundred (100) cases, including a number involving employment-related issues" (Pls. Opposition, at p. 2). Based on Bartlett's testimony, that "number" is one, and that was a wage and hour lawsuit involving payment of overtime (Bartlett Depo. pp. 11-13). Thus, plaintiffs have not shown that Bartlett possesses any experience whatsoever with respect to the issues about which he purports to testify here.

3. Plaintiffs further contend that Bartlett "will not (as Defendant claims) offer blanket conclusions as to whether Defendant engaged in a continuous and systematic pattern of age discrimination" (Pls. Opposition, at p. 2). Plaintiffs' contention seems rather disingenuous in light of Bartlett's explicit opinions, set forth in his Report, that "the absence of any meaningful written prohibition of age discrimination in the policies and procedures that were employed by Target human resources management or review process that could be accessed by these ex-employees *allowed age discrimination to take place*" and that he has "read and reviewed the depositions of about 50 former Target Region 300 employees who testified that they experienced age discrimination [and] [i]n [his] opinion, their stories are compelling and *evidence of actual age discrimination at Target*" (Bartlett Report, at p. 8) (emphasis added). In fact, despite their protestations to the contrary, plaintiffs explicitly state in their Opposition Brief that "Bartlett will further testify . . . [that] in the absence of legal management and oversight, *older employees were discriminated against on the basis of age and forced out of the company*" (Pls.

3

Opposition, at p. 1) (emphasis added).  Such opinions do "not aid the jury in making a decision, but rather attempt to substitute [their] judgment for the jury's" and are impermissible.  Rieger v. Orlor, Inc., 427 F. Supp. 2d 99, 104 (D. Conn. 2006); see also Hygh v. Jacobs, 961 F.2d 359, 363-64 (2nd Cir. 1992) (holding that district court erred in allowing expert testimony and noting that expert's opinions "merely [told] the jury what result to reach").

4.      Along these same lines, plaintiffs assert that Bartlett "will explain that there are a number of reasons Defendant wanted to lower the average age of its field and store operations management staff" (Pls. Opposition, at p. 3) (citing Exh. 1 to Bartlett Initial Report).  This opinion underscores the glaring weakness prevalent throughout Bartlett's testimony:  He offers a conclusory statement and then proceeds to offer his opinion as though the underlying statement is undisputed fact.   Neither Bartlett nor plaintiffs have adduced any evidence that Target sought to reduce the average age of its store-level employees; on the contrary, this is simply an allegation made by plaintiffs.  In fact, as demonstrated by defendant's expert, Dr. Mary Dunn Baker, the actual evidence demonstrates that the average age of the employees in the stores at issue remained the same or even *increased* (Exh. 1 to Pls. Motion to Strike Expert Mary Dunn Baker [Doc.166-2]) (Report of Mary Dunn Baker).

5.      Plaintiffs assert, citing Compton v. Subaru of America, Inc., 82 F. 3d 1513 (10th Cir. 1996), that the Daubert analysis is inapplicable to Mr. Bartlett's proposed testimony because that testimony is non-scientific (Pls. Opposition, at p. 10).  However, despite subsequently citing the U.S. Supreme Court's opinion in Kumho Tire, Ltd. v.

Carmichael, 526 U.S. 137 (1999), plaintiffs fail to mention that Kumho not only mentioned Compton but *expressly superseded it*:

> We granted certiorari in light of uncertainty among the lower courts about whether, or how, *Daubert* applies to expert testimony that might be characterized as based not upon "scientific" knowledge, but rather upon "technical" or "other specialized" knowledge. *Fed. R. Evid.* 702; compare, *e.g. Watkins v. Telsmith, Inc.*, 121 F.3d 984, 990-991 (CA5 1997), with, *e.g. Compton v. Subaru of America, Inc.*, 82 F. 3d 1513, 1518-1519 (CA10), cert. denied, 519 U.S. 1042, 136 L. Ed. 2d 536, 117 S. Ct. 611 (1996).
>
> . . .
>
> The initial question before us is whether [*Daubert's*] basic gatekeeping function applies only to "scientific" testimony or to all expert testimony. We, like the parties, believe that it applies to all expert testimony.

Kumho, 526 U.S. at 146-47.  The Supreme Court further stated that the *Daubert* factors concerning admissibility (*i.e.* "[w]hether a theory or technique can be (and has been) tested," "[w]hether it has been subjected to peer review and publication," "whether there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation,'" and "[w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community'") may be applied by the district court even when the proposed testimony is non-scientific. Id. at 149.  Thus, Compton no longer is applicable to the Court's analysis.

6.  Perhaps most notably, plaintiffs devote a substantial portion of their opposition discounting the relevant Daubert factors that Bartlett's testimony cannot satisfy, under the theory of Rule 702's "flexibility" (Pls. Opposition, at p. 13).  See id. pp. 7-8 (acknowledging that Bartlett "has no education, training or background in employment law or discrimination matters); id. p. 8 ("Mr. Bartlett need not have any

5

specific licenses or degrees"); id. pp. 8-9 ("And, Mr. Bartlett need not have complete knowledge about the industry or field in question"); id. p. 9 ("Mr. Bartlett also need not have experience in *alone* drafting anti-discrimination policies.")[1] (emphasis in original); id. p. 11 ("The fact that an expert lacks firsthand knowledge or has not done any independent examination does not make his testimony *per se* inadmissible); id. p. 13 (acknowledging that Bartlett's opinions "cannot be tested and have not been subject to peer-review"); id. p. 14 ("[A] proposed expert should not be disqualified from testifying merely because the purported expert is unfamiliar with the definitions or standards set by statute or regulation that relate to the case.").

Plaintiffs' repeated discountenance begs the question of which Daubert factors Bartlett's testimony can satisfy. Apparently, plaintiffs believe that Bartlett's general consulting experience, combined with his review and wholesale acceptance of the testimony of plaintiffs and their supporting witnesses,[2] and a review of documents hand-

---

[1] Plaintiffs' vague assertion that Bartlett "played a hand in all the policies implemented for the companies he founded," Pls. Opposition, at p. 9, cannot overcome his explicit testimony that he has never been involved in preparing *any* anti-discrimination policy, particularly where he seeks to opine about the effectiveness of Target's anti-discrimination policies and procedures. Plaintiffs' contention is tantamount to asserting that simply by virtue of being the CEO of an auto manufacturing company, an individual necessarily could examine and repair the electrical system of the vehicles the company produces.

[2] Bartlett claims to have reviewed the deposition testimony of former Region 300 Group Director Carmen Moch (Pls. Opposition, at p. 3). However, with respect to the pattern-and-practice claims in this lawsuit, Ms. Moch was not deposed until February 20, 2009, while Bartlett prepared his initial Report on June 25, 2008 and his Supplemental Report on January 5, 2009. Thus, the only deposition transcript that Bartlett could have reviewed was from Ms. Moch's November 2004 deposition given in the Maiahy case, testimony that plaintiffs themselves argued, in their motion to compel Moch's second deposition, did not address the relevant issues because it "occurred long before the currently known facts were discovered and predated the conditional certification of the class. Further, Ms. Moch was not 'questioned

picked by plaintiffs' counsel (none of which Bartlett cites with specificity) and website articles written by third parties, demonstrate that he possesses a sufficient basis on which to opine not only about Target's business strategies but to further leap to the conclusion that the Company engaged in a widespread plan to eliminate older workers. This Court should not permit "expert" testimony under these circumstances.

## CONCLUSION

As this Court has made clear, it is not the province of expert witnesses to testify as to legal opinions or conclusions. MTV Capital Ltd. P'ship v. Quvis, Inc., 2008 U.S. Dist. Lexis 106876, at *5 (W.D. Okla. Nov. 12, 2008) (quoting U.S. v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006)). It is apparent – and transparent – that such testimony is exactly what plaintiffs seek to introduce by way of Mr. Bartlett. For all of the reasons asserted herein, as well as in defendant's Motion to Exclude, Bartlett's expert opinion does not meet the exacting standards required by Federal Rule of Evidence 702. Accordingly, Mr. Bartlett's report and proposed testimony are due to be excluded in their entirety.

Respectfully submitted,

*/s/ David T. Wiley*
Thomas A. Davis
davist@jacksonlewis.com
David T. Wiley
wileyd@jacksonlewis.com
Shannon L. Miller
millers@jacksonlewis.com

---

extensively' as suggested by Target; her deposition consisted of merely 69 pages" (Pls. Reply to Def. Response to Pls. Second Motion to Compel [Doc. 85], Appendix A, at p. A-5).

**Jackson Lewis LLP**
First Commercial Bank Building
800 Shades Creek Parkway, Ste. 870
Birmingham, Alabama  35209
Ph: (205) 332-3101/3102/3104
Fax: (205) 332-3131

**Attorneys for Defendant Target Corporation**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

Jana B. Leonard, Esq.
Joshua C. Stockton, Esq.
Shannon Haupt, Esq.
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. Walker
Oklahoma City, OK  73139
leonardjb@leonardlaw.net
stocktonj@leonardlaw.net
haupts@leonardlaw.net

Stanley M. Glass, Esq.
Woodrow K. Glass, Esq.
Scott F. Brockman, Esq.
Scott K. Thomas, Esq.
Zachary K. Bradt, Esq.
WARD & GLASS, L.L.P.
1821 E. Imhoff Road, Suite 102
Norman, OK 73071

/s/ *David T. Wiley*
David T. Wiley
Counsel of Record