## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHARLETTE D. LACHNEY, EBBIN NORRIS, ETHEL ROBINSON *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIV-06-1389-HE (Consolidated Cases) |
| TARGET CORPORATION, | ) ) ) | |
| Defendant. | ) | |

### DEFENDANT TARGET CORPORATION'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE PLAINTIFFS' PROPOSED EXPERT TESTIMONY OF GARY RICHETTO

In reply to Plaintiffs' Response in Opposition to Motion to Exclude Plaintiffs' Proposed Expert Report and Testimony of Gary Richetto, defendant Target Corporation provides the following:

1.      Plaintiffs assert that Mr. Richetto is qualified as an expert in this case because he has provided expert testimony in other cases regarding the "efficacy and impact of oral, written, and non-verbal messages in work place communications" (Pls. Opposition, at p. 6).  Mr. Richetto may in fact possess such experience but that is immaterial to what he purports to offer in the way of expert testimony in this case.  On the contrary, Richetto admits that prior to the instant case, he has never held himself out as being an expert in the area of discrimination or bias in employee communications and acknowledges that this is his first employment discrimination case (Richetto Depo. pp. 36, 118).  He further concedes that he lacks any practical training, education or experience related to his purported ability to discern the existence or non-existence of a

discriminatory influence or bias in workplace communications; that prior to this case he has never provided expert testimony regarding age discrimination or employment discrimination in general; that he has never taken a course on employment law and is not a human resources professional; that he has never investigated the merits of any age discrimination claim and has never developed or implemented an anti-discrimination policy or procedure; and that he has never authored any publications or articles on employment discrimination.  Id. pp. 11-12, 13, 32, 34, 36-37, 39, 73, 75, 80.

In fact, Richetto acknowledges that the vast majority of his expert testimony has involved warnings and instructions related to product liability matters and, despite claiming that his expertise is broader than analysis of warning labels and instructions, has explicitly testified that his expertise is limited to the adequacy of warnings and instructions (Richetto Depo. dated July 21, 2006, at pp. 20-21, Dorsey v. Southland Flooring of Tulsa, Inc., No. CJ-2003-272, District Court of Okmulgee County, OK) (Exhibit C to Def. Motion).  Therefore, whatever experience Richetto may possess, it is clear that he is not qualified as an expert on the particular subject matter at issue in this case.  See Lifewise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004) (noting that expert witness must, through knowledge, skill, experience, training or education, be qualified in the *particular* subject matter).

2.     Plaintiffs further contend that Richetto "does not intend to offer blanket conclusions as to whether Defendant engaged in a continuous and systematic pattern of age discrimination" (Pls. Opposition, at p. 2).  However, plaintiffs then explicitly state that he intends to "testify that the unspoken messages (i.e. meta messages) . . . *were in*

2

*concert with a culture that was discriminatory in terms of age.*"  Id.  (emphasis added).

Such opinions do "not aid the jury in making a decision, but rather attempt to substitute

[their] judgment for the jury's" and are impermissible.  Rieger v. Orlor, Inc., 427 F. Supp.

2d 99, 104 (D. Conn. 2006); see also Hygh v. Jacobs, 961 F.2d 359, 363-64 (2nd Cir.

1992) (holding that district court erred in allowing expert testimony and noting that

expert's opinions "merely [told] the jury what result to reach").

3.      Along these same lines, plaintiffs assert that Richetto "will further explain

that Defendant's college recruiting efforts 'completed a picture that . . . an inordinate

number of . . . younger as opposed to older folks [were] entering Defendant's

workforce'" (Pls. Opposition, at p. 3) (citing Exh. 2 to Richetto Report & Richetto Depo.

pp. 78-80).   This opinion underscores one of several glaring weaknesses prevalent

throughout Richetto's testimony:  He offers a conclusory statement and then proceeds to

offer his opinion as though the underlying statement is undisputed fact.   Neither Richetto

nor plaintiffs have adduced any evidence that Target was hiring an "inordinate number"

of younger employees.  On the contrary, this is simply an allegation made by plaintiffs.

Notably, Richetto admits that he did not review any analyses of Target's hiring and firing

statistics to determine if there was any factual support for plaintiffs' allegation –

admitting instead that he was unaware that such an analysis had been conducted – and

further admits that in the workplace it is typical for older employees to be replaced by

younger employees (Richetto Depo. pp. 75-77, 78-84).

4.      Plaintiffs attempt to bolster the validity of Richetto's opinion by noting that

he reviewed many deposition transcripts and "a myriad of policies and materials

Defendant produced in connection with the litigation" (Pls. Opposition, at pp. 3-4).  What plaintiffs fail to mention is that nearly all of the deposition transcripts Richetto reviewed were of plaintiffs themselves and individuals supporting the plaintiffs, and further that all of these transcripts were selected for Richetto's review by plaintiffs' counsel.  Moreover, despite claiming that "upper level management made clear that 'Brand' meant 'young and energetic,'" id. p. 3, Richetto did not review *any* of the more than a dozen deposition transcripts of Target executives taken in this case, including but not limited to those of former Senior Regional Vice President Tina Schiel and former Region 300 Group Director Carmen Moch (who allegedly masterminded the purported plan to eliminate older workers), John Willoughby (the corporate representative who testified regarding Target's marketing strategies) and Monica Hall (Target's human resources corporate representative).[1]  In addition, Richetto concedes that no Target document he reviewed demonstrates that the terms "Brand," "Fast, Fun and Friendly" or "Speed is Life" suggested age bias (Richetto Depo. pp. 58-59).  Likewise, Richetto did not review performance evaluations or other documents involving under-40 employees to see if the expressions "Brand," "Fast, Fun and Friendly" and "Speed is Life" were used in the same manner to describe "younger" employees.  Id. pp. 120-24, 127-28.

5.     Plaintiffs apparently believe that Richetto's review of a new employee orientation video, in which Richetto claims that most of the images were of "younger"

---

[1]   Mr. Richetto prepared his expert report in June 2008 and the depositions of all of the Target executive witnesses *in this case* were conducted in 2009.  Plaintiffs' reference to "upper management" is based on the testimony of Richard Carraher, a former recruiter who sued Target (and lost) and who claims that he heard former Diversity Manager Develle Turner characterize "Brand" as meaning "young and energetic."  Mr. Turner was not deposed in this case.

individuals, sufficiently demonstrates that the Company's work force is "primarily under age 40" and therefore provides "non-verbal cues" of age bias in the Company's culture (Pls. Opposition, at p. 4).   Such a conclusion is far-fetched, given Richetto's concessions that the video likely used *actors*, not employees; that he only watched the video one time; and that his determination of the apparent age of the actors was based strictly on his untrained judgment (Richetto Depo. pp. 50-51).   Richetto further concedes that an orientation video likely is viewed by individuals who already have been hired and that he cannot say whether new "older" hires would perceive the video as suggesting an age bias. Id. pp. 53-55.   Under these circumstances, the new orientation video hardly establishes a basis on which any reliable assessment from which a corporate "meta message" could be deduced, even if the general meta-message concept could be validly demonstrated (which it cannot).

6.      Plaintiffs contend, with no support whatsoever, that Richetto's methods "can be tested and are supported by numerous publications, studies, treatises and other sources" (Pls. Opposition, at p. 13).   Plaintiffs do not cite to any such support *because none exists*.   Rather, Richetto merely asserts that several general studies have been conducted on the non-verbal part of communication – not that any studies, treatises or other scientifically reproducible analyses on the theory of "meta-messages" exist.   On the contrary, he admits that there is no means by which his meta-message analytical method can be replicated or refuted because "another person . . . based on communication theory and applying the basic communication model . . . may reach [] a different conclusion" (Richetto Depo. pp. 97-98).   He further concedes that he cannot identify, and cannot cite

to, any publication, study, treatise or other source in which the meta-messaging theory was applied in the context of employee communications and further acknowledges that he did not perform, or even review, any research regarding age-based stereotypes and relied solely on his own experience in concluding that Target's expressions contain a hidden message that Target disfavors older employees. Id. pp. 151-52, 192-94. In short, Richetto admits that there is no way to test whether a meta-message exists and that it really comes down to whether you believe him or not. Id. p. 100.

7.    Most notably, even if the Court were to accept the premise that the meta-message theory was valid in general, Richetto's opinions would still be inadmissible because they are unreliable. Richetto acknowledges that the meta-message theory is all about "context," that as much as 83% of the impact of face-to-face communication comes from the non-verbal portion of the communication (*e.g.* tone, inflection, pauses, body language) and therefore that without the non-verbal portions of the relevant communications, no meta-message can be inferred (Richetto Depo. pp. 43-45, 99-100). Thus, he admits that by merely reading plaintiffs' deposition transcripts and plaintiffs' allegations of purportedly age-biased comments, he could not account for the 83% portion of the alleged communications that would have been non-verbal. Id. pp. 46-48. "[A]n expert with the necessary qualifications in the relevant field may give expert testimony only if (i) the testimony is based upon sufficient facts or data, (ii) the testimony is the product of reliable principles and methods, and (iii) the witness has applied the principles and methods reliably to the facts of the case." In re Williams Sec. Litig., 496 F. Supp. 2d 1195, 1233 (N.D. Okla. 2007) (citing Fed. R. Evid. 702). Accordingly, "any

step that renders the analysis unreliable . . . renders the expert's testimony inadmissible." Goebel v. Denver & Rio Grande Western R.R., 346 F.3d 987, 992 (10th Cir. 2003). "This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." Id. Given that Richetto could not have discerned any non-verbal aspects of the written communications he purports to analyze, he effectively concedes that more than 80% of his analysis necessarily is missing. Under these circumstances, assuming that the meta-message concept could be reliably applied, he has failed to "apply the principles and methods to the facts of [this] case."

## CONCLUSION

What plaintiffs seek to offer by way of Mr. Richetto's opinion is "what a reasonable person might conclude based upon the receipt of certain kinds of messages" (Pls. Opposition, at p. 10). A reasonable person, of course, does not need an "expert" to tell them how to interpret "Brand," "Fast, Fun and Friendly" and "Speed is Life," as interpretation of such expressions is "within the juror's common knowledge and experience[.]" MTV Capital Ltd. P'ship v. Quvis, Inc., 2008 U.S. Dist. Lexis 106876, at *4 (W.D. Okla. Nov. 12, 2008) (citing U.S. v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006)). Rather, "the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from [the] facts and circumstances" of this case and therefore "an expert witness is not necessary and is improper." Wilson v. Muckala, 303 F.3d 1207, 1219 (10th Cir. 2002). Accordingly, for all of the reasons asserted herein, as well as those in defendant's motion, Mr. Richetto's report and proposed testimony are due to be excluded in their entirety.

Respectfully submitted,


*/s/ David T. Wiley*
Thomas A. Davis
davist@jacksonlewis.com
David T. Wiley
wileyd@jacksonlewis.com
Shannon L. Miller
millers@jacksonlewis.com

**Jackson Lewis LLP**
First Commercial Bank Building
800 Shades Creek Parkway, Ste. 870
Birmingham, Alabama  35209
Ph:     (205) 332-3101/3102/3104
Fax:    (205) 332-3131

**Attorneys for Defendant Target Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

Jana B. Leonard, Esq.
Joshua C. Stockton, Esq.
Shannon Haupt, Esq.
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. Walker
Oklahoma City, OK  73139
leonardjb@leonardlaw.net
stocktonj@leonardlaw.net
haupts@leonardlaw.net

Stanley M. Glass, Esq.
Woodrow K. Glass, Esq.
Scott F. Brockman, Esq.
Scott K. Thomas, Esq.
Zachary K. Bradt, Esq.
WARD & GLASS, L.L.P.
1821 E. Imhoff Road, Suite 102
Norman, OK 73071


/s/ *David T. Wiley*
David T. Wiley
Counsel of Record