**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

CHARLETTE D. LACHNEY, ET AL.,   )
                                 )
           Plaintiffs,     )
vs.                             )       NO.  CIV-06-1389-HE
                                 )        (Consolidated Cases)
TARGET CORPORATION,       )
                                 )
           Defendant.    )

## ORDER

Defendant has moved to exclude, on <u>Daubert</u> grounds,[1] the testimony of two of plaintiff's expert witnesses, Robert Bartlett and Gary Richetto.  Similarly, plaintiffs have moved to exclude the proposed testimony of defendant's expert Mary Dunn Baker.  The motions have been briefed by the parties.  Each proposed witness has been deposed and portions of that testimony have been attached to the parties' briefs.  Further, each witness has submitted an expert report.  The court conducted a hearing on April 1, 2010, as to the motion pertaining to Dr. Baker but concludes that a hearing is unnecessary as to the motions pertaining to Mr. Bartlett and Dr. Richetto.

The general standards for a <u>Daubert</u> challenge to expert testimony are well established.  "In accord with [Rule 702], the Supreme Court has determined that the [trial judge] 'must ensure that any and all scientific testimony or evidence is not only relevant, but reliable.'" <u>Bitler v. A.O. Smith Corp.</u>, 400 F.3d 1227, 1232 (10th Cir. 2004) (quoting

---

[1] *<u>Daubert v. Merrill Dow Pharm. Inc.</u>, 509 U.S. 579 (1993).  See also Fed.R.Evid. 702, which now substantially incorporates the principles of <u>Daubert</u>.*

<u>Daubert</u>, 509 U.S. at 589).  This gatekeeper function applies to all expert testimony, not merely to that deemed to be "scientific" in nature.  <u>Kumho Tire Co. Ltd. v. Carmichael</u>, 526 U.S. 137, 147-49 (1999).[2]  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In deciding the admissibility of expert testimony, the court must determine whether the expert is proposing to testify to scientific or other specialized knowledge which will assist the trier of fact in understanding or determining a fact in issue.  <u>Daubert</u>, 509 U.S. at 592.  The court first determines whether the proposed expert is qualified to offer an opinion on the issues involved in the particular case.  <u>Ralston v. Smith & Nephew Richards, Inc.</u>, 275 F.3d 965, 969 (10th Cir. 2001).  A qualified expert must possess the necessary knowledge, skill, experience, training or education relevant to the facts at issue.  <u>Id.</u>  The court then must conduct a two-part inquiry to fulfill its <u>Daubert</u> gatekeeping role, determining first if the expert's proffered testimony has "'a reliable basis in the knowledge and experience of his [or her] discipline.'"  <u>Bitler</u>, 400 F.3d at 1232-33 (quoting <u>Daubert</u>, 509 U.S. at 592).  In making this determination, the district court must decide whether the reasoning or methodology

---

[2]*Plaintiffs' reliance on <u>Compton v. Subaru of America Inc.</u>, 82 F.3d 1513 (10th Cir. 1996) for the proposition that <u>Daubert</u> standards do not apply to opinions based on experience and training (plaintiffs' response brief, p. 10) is misplaced, as <u>Compton's</u> holding in that regard has been abrogated by <u>Kumho</u>.  See <u>United States v. Charley</u>, 189 F.3d 1251, 1261 (10th Cir. 1999)(noting the abrogation).*

underlying the testimony is scientifically valid.  *Id.* at 1233.  Second, the district court must

inquire "into whether proposed testimony is sufficiently 'relevant to the task at hand.'"  *Id.*

at 1234 (quoting <u>Daubert</u>, 509 U.S. at 597).  Is there an appropriate "fit" between the

evidence offered and the material issue to which it is directed?

In determining whether an expert's proffered testimony meets the Rule's reliability

standards, <u>Daubert</u> and Rule 702 provide a non-exclusive list of factors for consideration, if

applicable.  As the 2000 Advisory Committee Notes to Rule 702 state:

> The specific factors explicated by the <u>Daubert</u> court are (1) whether the
> expert's technique or theory can be or has been tested — that is, whether the
> expert's  theory can be challenged in some objective sense, or whether it is
> instead simply a subjective, conclusory approach that cannot reasonably be
> assessed for reliability; (2) whether the technique or theory has been subject
> to peer review and publication; (3) the known or potential rate of error of the
> technique or theory when applied; (4) the existence and maintenance of
> standards and controls; and (5) whether the technique or theory has been
> generally accepted in the scientific community.

The Notes also identify a number of other factors which may, in a proper case, be relevant

to the determination of whether expert testimony is sufficiently reliable.  These include: (1)

whether the expert proposes to testify about matters growing naturally and directly out of

research he/she has conducted independent of the litigation, or whether the opinion was

developed expressly for the purpose of testifying, (2) whether the expert has "unjustifiably

extrapolated from an accepted premise to an unfounded conclusion," (3) whether the expert

has adequately accounted for obvious alternative explanations, (4) whether the expert is

being as careful in his/her litigation consulting work as he or she would be in their regular

professional work, and (5) whether the particular field of expertise claimed by the expert is

3

one known to reach reliable results for the type of opinion sought to be given.   *Id.*

The court determines the relevance or "fit" of proposed testimony and also considers the related question of helpfulness to the jury.  Expert testimony is unnecessary where it addresses a question the jury is capable of assessing or determining for itself.  Thompson v. State Farm Fire & Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994).  Further, the proposed testimony may not go to ultimate issues of law governing the jury's deliberations, as instructions on the law are the function of the court.  United States Aviation Underwriters, Inc. v. Pilatus Business Aircraft, Ltd., 582 F.3d 1131, 1150 (10th Cir. 2009); Specht v. Jensen, 832 F.2d 1516 (10th Cir. 1988).

The burden of demonstrating the admissibility of expert testimony, tested against the standards of Daubert and Rule 702, is on the proponent of the testimony.  U.S. v. Nachio, 555 F.3d 1234, 1241 (10th Cir. 2009) *(en banc)*; Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001).

Applying these standards in the circumstances of this case, the court concludes the proposed testimony of all three experts should be excluded.

<u>Robert Bartlett</u>

Robert Bartlett is a business management consultant, with particular emphasis in field management and store operations for the retailing industry.  He was formerly the partner in charge for the retail consulting operations of both Touche Ross & Co. (1971-1986) and Coopers and Lybrand (1990-1992).  He is more recently a principal with Bartlett Joseph Associates, a management consulting firm.  He has advised a wide variety of businesses in

4

various aspects of retail management.  A portion of his practice has been as an expert witness in litigation, including testimony related to vendor terms and purchase order management, store operations, and compensation practices.

Broadly stated, plaintiffs seek to have Mr. Bartlett testify to two general propositions: (1) that Target failed to establish a "credible and effective mechanism to prevent age discrimination" and (2) that as a result of the lack of controls and the business strategy otherwise adopted by Target, plaintiffs experienced age discrimination.[3]

Defendant argues Mr. Bartlett is not qualified to offer opinions of these types, citing his lack of formal training or experience in employment discrimination or in the human resources field and his not having offered expert testimony previously in the areas for which he is now being offered.  Plaintiffs respond by pointing to Bartlett's extensive experience in various aspects of business management.  There is, of course, no requirement that an expert witness have  formal training in an area to be qualified.  The necessary expertise can be acquired through experience.  Similarly, the fact that Mr. Bartlett has not previously testified as an expert in this particular area is of no significance if he is otherwise qualified — everyone has to start somewhere.  However, as plaintiffs acknowledge,[4] the focus is on whether the witness has sufficient training or experience in the specific subject matter.  It is not enough to have expertise in general.  There must be a reasonable fit between the proposed

---

[3]*Bartlett submitted an expert report dated June 25, 2008, and supplemented by report dated January 5, 2009.  Exhibits 1 and 3 to plaintiffs' response brief [Doc. #175].  He was deposed on January 29, 2009.  The material quoted in the text was from that deposition, at p. 78.*

[4]*Plaintiffs' response brief, p. 6.*

5

expert's area of expertise and the issues in the case.  While Mr. Bartlett's experience with a variety of issues in management and retailing is, as he noted, "broad and deep", the court concludes he does not have the expertise necessary to draw the sorts of conclusions he purports to draw here.  There is nothing, apart from a familiarity with management concepts in general, to support the notion that he could testify as an expert to the adequacy of procedures for addressing discrimination or as to whether these plaintiffs actually experienced age discrimination.

A conclusion that a particular witness is unqualified to offer the particular opinions proposed is, by itself, sufficient to exclude the testimony.  However, as the question of Mr. Bartlett's qualifications is close enough that reasonable persons might conceivably reach a different conclusion, it is appropriate to address the other grounds for objection to his testimony.  Considering those objections, the overall question of the admissibility of his testimony is not close.

There is no reliable basis, within the meaning of the Daubert/702 standards, for Mr. Bartlett's opinion that Target lacked an adequate and credible mechanism to combat age discrimination.  It is clear from the submissions that Mr. Bartlett made no meaningful effort to investigate what Target's internal processes for handling discrimination complaints were. He had no knowledge of how the Target hotline operated. He had no knowledge of the circumstances of any plaintiff's separation from Target apart from what the plaintiff

described in his or her deposition.[5]   Indeed, it is clear that his "investigation" consisted almost entirely of reading the depositions of approximately 50 plaintiffs and then accepting, without further inquiry, plaintiffs' counsel's assurance that there was no other pertinent information.[6]  Mr. Bartlett essentially decided that he believed the plaintiffs and found their stories "compelling", and that if they were unsatisfied with their treatment by defendant then its internal processes to combat age discrimination must necessarily have been inadequate. He identifies no principle of management or process adequacy against which defendants' system might be tested but, after having decided the plaintiffs were wronged, simply assumes that if they were wronged the process must have been inadequate.   Such an approach is entirely inconsistent with Rule 702's requirement of "reliable principles and methods" and Daubert's concern that expert testimony be based on some principle or theory that can be challenged and evaluated in an objective sense as opposed to the expert's subjective, conclusory opinions.   Mr. Bartlett's proffered testimony as to the adequacy of defendant's system for dealing with discrimination must be excluded.

His testimony as to whether the plaintiffs experienced age discrimination fares no better.  Mr. Bartlett makes it explicitly clear that his conclusion in this regard is based largely

---

[5]*Bartlett deposition at 74: "Q.  Did you make any effort whatsoever to seek out the facts and data surrounding and concerning the employment decisions about which you opine?  A.  No, because I believed that Target would have provided evidence to rebut this case is they were able to do so."*

[6]*Mr. Bartlett's remarkable acknowledgment that he relied wholly on plaintiffs' counsel to learn of any evidence supporting defendant's position gets him some credit for candor, but substantially undercuts any suggestion of a meaningful investigation or other objective basis for his conclusions.*

on the fact that he believed what the plaintiffs said in their depositions.  Determinations of the credibility of witnesses are for the jury and are ordinarily not the proper subject of expert testimony.  US v. Benally, 541 F.3d 990, 994 (10th Cir. 2008), *cert. denied*, 129 S.Ct. 1020 (2009).  As noted above, expert testimony is unnecessary when it goes to matters the jury is capable of assessing or determining for itself. Similarly, to the extent his conclusions are based on his view of defendants motivation and intent, expert testimony as to such matters is ordinarily inappropriate.  DePaepe v. General Motors Corp., 141 F.3d 715, 720 (7th Cir. 1998); Rezulin Products Liability Litigation, 309 F.Supp.2d 531, 546 (S.D.N.Y. 2004) (excluding expert testimony as to corporate motivation and intent as not based on any relevant body of knowledge or expertise and as assuming the role of advocate).

In short, Mr. Bartlett, while no doubt skilled and accomplished in many areas, lacks the background and experience to support the particular expert testimony plaintiffs seek to have him offer here.  Further, even if he were assumed to clear the hurdle of qualification, his opinions lack a reliable, objective basis, are not the product of reliable methods, and rely on determinations the jury can and must make for itself.  His testimony will be excluded in its entirety.

<u>Gary Richetto</u>

Dr. Gary Richetto holds a Ph.D. from Purdue University in organizational and interpersonal communications.  In addition to teaching and research in these areas, he has provided testimony as a "human factors" expert in various contexts.  His past expert testimony appears to have principally involved the adequacy of warnings in a products

8

liability context, but has also included work as to how particular messages are perceived by the persons receiving them and how corporate culture may impact the implementation of safety requirements or other policies.

Defendants object to Dr. Richetto's proposed testimony on the basis he is not qualified to give the particular testimony he seeks to offer here, that his methods in arriving at his conclusions are unreliable and lack an objective basis, and that the conclusions and opinions he offers are ones the jury is capable of deciding for itself.

Although there is some imprecision in plaintiffs' description of the purpose(s) for which they seek to offer Dr. Richetto's opinions, his opinions essentially boil down to these: (1) that various slogans or other conduct employed by Target included a "meta-message" (i.e. an unspoken or implicit message) emphasizing youthfulness,[7] (2) that the result of these meta-messages and other conduct was a corporate culture that valued youthfulness over age or experience, and (3) that this corporate culture was discriminatory in terms of age.[8]

Assuming that conclusions such as these are otherwise appropriate for expert testimony, the court concludes Dr. Richetto clears the initial hurdle of being qualified, in

---

[7]*Dr. Richetto's opinions as to meta-message were tied principally to a Target slogan of "Fast, Fun and Friendly" and to use of the phrase "Target brand."*

[8]*Dr. Richetto expressed the intent to avoid acting as a "judge" with respect to whether discrimination occurred as to plaintiffs, and plaintiffs argue he will not offer "blanket" conclusions as to whether Target engaged in a "continuous and systematic pattern of age discrimination" (plaintiffs' response brief, Doc. #176, p. 2), but it seems clear Dr. Richetto's conclusions do go, at least in part, to the issue of whether age discrimination occurred here. For example, he refers to the meta-messages as being part of a culture "that was discriminatory in terms of age." Richetto deposition, p. 191.*

general, to offer opinions in this area.   He has substantial training and experience in communications theory.   He has prior experience in identifying and analyzing the manner in which certain types of communications are interpreted.   He has experience in evaluating the "corporate culture" of an entity and how that may impact implementation of stated policies or standards.   It is true that his training and experience are not in the context of assessing age discrimination or discrimination in general, but, as noted above, there's a first time for everyone.   If the training and experience he does have are otherwise sound and applicable, there is no reason he should not be able to apply it in a new (for him) factual context.   While the field of "human factors" is, in at least some contexts, a rather amorphous field the parameters of which may be hard to define (and which can present particularly thorny <u>Daubert</u> issues), the court concludes Dr. Richetto's experience and expertise are, in general, sufficient to offer a basis for testimony in this case.

The more difficult questions as to Dr. Richetto's proposed testimony involve the relevance and reliability of his opinions.   And those questions turn, in considerable part, on the purpose or purposes for which his testimony is offered.

To the extent that Dr. Richetto's opinions are offered to prove what Target management intended or what it's motivation was in how it managed it's stores, opinion testimony as to such matters is, as noted above, ordinarily inappropriate.   What defendant or its managers intended might well be shown by the statements of those involved or might be proved circumstantially by reasonable inferences from what they did, but those are matters the jury is capable of deciding for itself based on the evidence presented.   The court is

10

unpersuaded that Dr. Richetto's opinions in that regard are grounded in some scientific discipline, or have such an objective basis, as would make expert testimony appropriate.[9]

Dr. Richetto's expert report and deposition suggest that, in part, his opinions will go to the question of whether these plaintiffs <u>felt</u> they were the subject of age discrimination or age-conscious policies.  While such opinions are arguably relevant, potentially going to questions of constructive discharge or damages, they are clearly matters the jury can determine for itself after hearing the testimony of the plaintiffs.  If one or more plaintiffs testify they thought they were subject to adverse treatment based on age and the jury believes them, there is no reason for additional expert testimony as to what the plaintiff's felt.

Finally, to the extent that Dr. Richetto's opinions address the matter of corporate culture — what it was or what it may have caused or encouraged — they are subject to substantially the same problems as impacted Mr. Bartlett's testimony.  Like Mr. Bartlett, Dr. Richetto's analysis of the culture was based largely on information provided to him by plaintiffs' counsel.  He reviewed the depositions of the plaintiffs, visited the Target website, and viewed (once) a Target training video.[10]  He did not inquire into defendant's policies or training practices.  He made no effort to examine statistical information about defendant's

---

[9]*Dr. Richetto identifies an analytical framework, based on human communications theory, that he employed in evaluating the slogans and other materials he reviewed.  However, he seems to concede the framework is not such as would necessarily, or even probably, result in a similar conclusion by some other expert employing the same approach.  As such, the Rule 702 concerns with an objective, rather than a subjective or conclusory, basis for opinions, known or potential rates of error and the like are implicated.*

[10]*He also indicates he looked at various magazine or similar articles about Target, but did not rely on them for his opinions.  Richetto deposition, pp. 159-163.*

employment practices or to inquire as to the attitudes or experiences of persons other than plaintiffs. The court does not suggest that any of these areas of inquiry are necessarily required for an opinion as to "corporate culture" to be admissible, or that there is anything necessarily wrong with an expert limiting his or her review to matters provided by counsel. Indeed, in some circumstances (i.e. "did this widget work like it was supposed to?"), that may be perfectly appropriate. However, where, as here, the inquiry is what the "culture" of an organization was or what the "pattern and practice" of an organization was, some effort to objectively determine those facts is necessary. An inquiry which essentially "cherry picks" the opinions or experiences of only some participants, whether through selection by counsel, by limiting the inquiry to plaintiffs, or otherwise, is not a sufficient (i.e. reliable) basis for drawing expert conclusions in this regard.

For these reasons, the court concludes the proffered opinions of Dr. Richetto do not satisfy the applicable requirements of <u>Daubert</u>/Rule 702 and must be excluded.

<u>Dr. Mary Dunn Baker</u>

Dr. Mary Dunn Baker holds a Ph.D. in economics from Florida State University. She was an adjunct professor or instructor of economics at Florida State and other universities through 1991. Since 1986, she has been affiliated with ERS group, which provides various consulting and expert services. During that time, she has been involved in designing and conducting statistical analyses in a variety of employment contexts. She has conducted seminars and undertaken research in the use of statistical information in employment discrimination cases. She has testified extensively as an expert witness in many employment

discrimination cases, including more than 20 involving age discrimination claims.

Dr. Baker examined employment and separation data for the 157 stores which defendant operates in its Group 391, for the 2004-5 time frame pertinent here.  She essentially concluded that a properly modeled statistical analysis of this data does not support plaintiffs' suggestion of a pattern and practice of age discrimination as to defendant's employees.  Her opinion is that the data "reveals the opposite pattern — the termination rate for older and/or long service employees was highly statistically significantly lower than the departure rate of younger and short-service workers."  Baker expert report, Ex. 1 to Plaintiff's motion [Doc. #166] at 12.

Plaintiffs object to Dr. Baker's testimony on the basis she is an economist rather than a statistical expert, and is hence unqualified to offer the opinions involved here.  They also argue that her opinions are not reliable and/or relevant for various reasons.

Dr. Baker's expert report makes it clear that the main purpose of her expert testimony is to <u>rebut</u> the opinions of plaintiffs' experts Bartlett and Richetto.  As testimony from those witnesses has been excluded, as set forth above, it may well be that defendant would not pursue testimony by Dr. Baker at all.  However, as her conclusions are such that her testimony might be offered by defendants regardless of the status of Mr. Bartlett and Dr. Richetto, the court concludes it is nonetheless appropriate to address plaintiffs' motion as to her.

The court has little difficulty in disposing of the challenge to Dr. Baker's qualifications.  Plaintiffs' objection that she is an economist rather than a statistician is

13

unpersuasive. Whatever the facts may be as to degree of overlap between those disciplines/areas, it is clear that Dr. Baker has substantial experience in the field of statistical analyses in the employment discrimination context. She is plainly qualified to offer opinions in this area.

Similarly, to the extent plaintiffs object to the mechanics of Dr. Baker's analysis, i.e. the actual computations she has performed, there has been nothing suggested that is a bar to admission.[11]

The principal issues that the plaintiffs do raise, described by them as going to both reliability and relevance, are ones the court views primarily as issues of relevance or "fit." As defendant argued at the April 1 hearing, the statistical methods employed by Dr. Baker in this case are, as a general matter, accepted means of proof in "pattern and practice" discrimination cases. *See* Hazelwood School Dist. v. United States, 433 U.S. 299 (1977); E.E.O.C. v. Sandia Corp., 639 F.2d 600 (10th Cir. 1980). In particular, the process of comparing the frequency of a particular event — here, the separation of Target employees during the pertinent time frame — with an expected frequency for such events based on some baseline and then determining whether there is a statistically significant difference between the observed events and the "expected" events, is an accepted method. As a result, and as there is, as noted above, no real argument as to the mechanics of Dr. Baker's analysis,[12] the

_____

[11]*The court does not understand the thrust of plaintiffs' concerns to be with the mechanics of Dr. Baker's analysis.*

[12]*Plaintiffs objected to Dr. Baker's analysis on the basis the "terminations" she analyzed did not include others within the class involved here, such as those claiming constructive*

court concludes the proffered testimony and evidence is not inadmissible by reason of any concern with its "reliability" as that term is employed in a <u>Daubert</u> analysis.

"Fit," however, is a problem.  For the evidence to be relevant and helpful to the jury in this case, it must have some tendency to show the presence or absence of a pattern or practice of age discrimination.  For the statistical evidence to do that, it must evaluate the relationship between the observable events which occurred — the separations — and the circumstances that would have been expected to exist but for the factors being evaluated — here, age and tenure of the employee.  In laymen's terms, what would Target's "separation" data have looked like if age/tenure was not a factor?

For purposes of her work, Dr. Baker assumed the answer to that question was that employees in a particular age/tenure classification would normally separate at a rate consistent with their percentage composition of the overall workforce.  As stated in her expert report (p. 5): "Therefore, the expectation is that the group of interest will be terminated in numbers consistent with their representation in the relevant employee 'pool.'" In other words, if employees between the age of 50 and 55 constituted 10% of Target's referenced workforce, she assumed persons in that age group should constitute 10% of the persons separating from employment during any pertinent period.  But is there a reasonable basis for that assumption?  Plaintiffs suggest there are several reasons why that assumption is not valid, alluding principally to their expectation that the "turnover" rate for brand new

_termination.  However, Dr. Baker clarified at the hearing (as her report indicated, p. 1, fn. 2) that she used the term "termination" to include all separations by employees in the pertinent class._

employees (the "probationary" employees as referenced at the hearing) would be higher, and perhaps much higher, than that for established employees. There are a variety of other possibilities that come to mind, but what is clear is that Dr. Baker did not make any attempt to determine what the actual experience of Target (or any other company or the retail industry generally) was as to the rate of separation (absent age discrimination) for any group or circumstance. She made no effort to determine what the real world experience was with respect to separation rates at various age or experience ranges. She simply assumed the indicated random distribution, tied to percentage of the workforce.

Dr. Baker suggests this assumption of random distribution is just the way statisticians do it and perhaps that is true. But the question here — of relevance and helpfulness to the jury — is more focused than some general statistical inquiry. Does the particular analysis done by Dr. Baker, based as it is on comparison to an assumed pattern of separation, truly assist the jury here? Defendant suggests that statistical analyses like Dr. Baker's are routinely allowed and relied on in cases like this, citing Hazelwood, Sandia and others. However, the court does not read those cases so broadly. It is one thing to assume that, over time, a workforce should have a racial and ethnic composition paralleling the community from which the employees are hired. *See* Brotherhood of Teamsters v. U.S., 431 U.S. 327, 340 (1977). It is something else again to assume random distribution in an age case, where a variety of circumstances may impact the analysis at different ranges and age groups. The discussion in E.E.O.C. v. Sandia Corp., *supra*, is instructive in that regard. Sandia was also an age discrimination case where the court considered statistical evidence as to pattern and

practice.  One of the statistical experts offered testimony as to a test "said to measure the difference between an observed frequency of the occurrence of an event and the frequency of the event which would be expected if the event had occurred by chance."  639 F.2d at 605-6.  And in evaluating the basis for the statistical significance of the "goodness of fit," the opinion indicates:

> Dr. Spalding conducted 36 separate analyses of the computer data with a view to establishing his "null hypothesis" that selection of an employee for inclusion in the layoff, all other factors being equal, was independent of age.

Here, Dr. Baker's analysis involved no similar effort.  Rather, she simply assumed a random distribution of separations based on the particular group or sub-group's composition of the total workforce.[13]

The bottom line is that, absent some evidence tending to show the reasonableness of Dr. Baker's assumption as to random distribution of the separation rates for the various age and tenure ranges, her conclusions as to the presence or absence of a statistically significant variance from that baseline simply don't help the jury resolve the issues in this case. Accordingly, the court concludes Dr. Baker's testimony lacks the necessary "fit" and must be excluded for that reason.

---

[13]Dr. Baker submitted, as proof of her experience in similar cases, her expert report in a case in the Southern District of Mississippi which eventually reached the Supreme Court. Smith v. City of Jackson, 544 U.S. 228 (2005).  The report does indeed show Dr. Baker's experience in this area, but it also illustrates the court's point here.  In that case, which involved allegations that the city's new pay plan discriminated against older police officers, the plaintiff's expert's analysis apparently assumed that the rate of pay under the new scheme, relative to "market rates" for police officers, was the same for both younger and older officers.  Dr. Baker reached a different overall conclusion, based on her determination that the referenced assumption was factually incorrect.  The accuracy of the underlying assumptions matters.

<u>Conclusion</u>

For the reasons stated, the motions to exclude the testimony of Mr. Bartlett [Doc. #162], Dr. Richetto [Doc. #161], and Dr. Baker [Doc. #166] are **GRANTED**.

**IT IS SO ORDERED**.

Dated this 12th day of April, 2010.

JOE HEATON
UNITED STATES DISTRICT JUDGE